# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**DAVID J. CUTSHAW**
**GABRIEL ADAM HAWKINS**
**KELLEY J. JOHNSON**
**TaKEENA M. THOMPSON**
Cohen & Malad, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**JAMES L. HOUGH**
**AMI ANDERSON NOREN**
Spangler, Jennings & Dougherty, P.C.
Merrillville, Indiana

**FILED**

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JEFFREY RIGGS and MARK ASHMANN, | ) | |
| | ) | |
| Appellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1109-CT-394 |
| | ) | |
| MARK S. WEINBERGER, M.D., | ) | |
| MARK WEINBERGER, M.D., P.C., | ) | |
| MERRILLVILLE CENTER FOR | ) | |
| ADVANCED SURGERY, LLC, and | ) | |
| NOSE AND SINUS CENTER, LLC, | ) | |
| | ) | |
| Appellees-Defendants. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Jeffery A. Dywan, Judge
Cause No. 45D11-1011-CT-0210; 45D11-1009-CT-0175

October 12, 2012

**OPINION ON REHEARING**

**BAKER, Judge**

This case comes before us on rehearing. In this interlocutory appeal, appellants-plaintiffs Mark Ashmann and Jeffrey Riggs appealed the trial court's grant of a Motion for a Trial Rule 35 Psychological Examination filed by appellees-defendants Mark S. Weinberger, M.D.; Mark S. Weinberger, M.D., P.C.; Merrillville Center for Advanced Surgery, LLC; and Nose and Sinus Center, LLC (collectively, the Weinberger Entities). Ashmann and Riggs contended that the Weinberger Entities did not show that Ashmann and Riggs placed their mental condition in controversy. Moreover, Ashmann and Riggs asserted that the Weinberger Entities did not have good cause for requesting the examinations.

In our memorandum decision, we affirmed the trial court's decision and remanded this cause for further proceedings. Riggs v. Weinberger, M.D., No. 45A03-1109-CT-394 Ind. Ct. App. May 31, 2012). Ashmann and Riggs now petition for rehearing, requesting that we clarify whether we determined "that a trial court 'may' or 'must' order an involuntary psychiatric examination when confronted with the facts and circumstances of this case." Appellants' Petition for Rehearing p. 2. We grant rehearing for the limited purpose of clarifying our original opinion.

FACTS

In resolving the question that Riggs and Ashmann present on rehearing, we incorporate below the relevant facts and discussion set forth in our original memorandum decision.[1]

> Ashmann and Riggs filed their respective medical malpractice complaints against the Weinberger Entities on September 16, 2010, and November 24, 2010. Ashmann alleged that he became Weinberger's patient on April 3, 2003. Ashmann further alleged that Weinberger failed to comply with the applicable standards of care and that as a direct and proximate result of Weinberger's acts and omissions, Ashmann had suffered and would continue to suffer in the future "great pain, emotional distress and mental trauma." Appellants' App. p. 165. Ashmann described his emotional injuries as follows in his Reply Submission to the Medical Review Panel:

>> Emotional injuries are also clearly relevant to this discussion. It is not unreasonable for Dr. Weinberger's patients, after Weinberger fled the country and appeared on "America's Most Wanted," after learning that Dr. Weinberger drilled holes in their maxillary sinuses in the wrong place, and after hearing that Dr. Weinberger did not do the surgeries that he said he would do, to be emotionally distraught and injured with feelings of being "duped." Emotional damages are particularly relevant in a case such as this, where Dr. Weinberger disappeared while actively treating [Ashmann]. Most recently, Dr. Weinberger's former patients, including [Ashmann], have had to relive the nightmare of his disappearance as news broke that Dr. Weinberger was found living in a tent on the side of the mountain in Italy in the middle of winter and, upon arrest, that he tried to harm himself to avoid extradition to the United States.

> Appellants' App. p. 211-12.

---

[1] In light of our decision to incorporate the relevant portions of our unpublished memorandum decision into this published opinion on rehearing, we deny the Weinberger Entities' motion to publish as moot.

3

Riggs alleged that he became Weinberger's patient on January 30, 2003. Like Ashmann, Riggs further alleged that Weinberger failed to comply with the applicable standards of care and that as a direct and proximate result of Weinberger's acts and omissions, Riggs had suffered and would continue to suffer in the future "great pain, emotional distress and mental trauma . . . ." Appellants' App. p. 4. Also like Ashmann, Riggs described his emotional injuries as follows in his Reply Submission to the Medical Review Panel:

> Emotional injuries are also clearly relevant to this discussion. It is not unreasonable for Dr. Weinberger's patients, after Weinberger fled the country and appeared on "American's Most Wanted," after learning that Dr. Weinberger drilled holes in their maxillary sinuses in the wrong place, and after learning that Dr. Weinberger did not do the surgeries that he said he would do, to be emotionally distraught and injured with feelings of being "duped."

Appellants' App. p. 215.

In June and July 2011, the Weinberger Entities filed respective Motions for Trial Rule 35 Psychological Examinations asking the trial court to compel Ashmann and Riggs to attend psychological examinations. On July 14, 2011, the trial court granted the Weinberger Entities' motion as to Riggs. The trial court's order provides in relevant part as follows:

> The Plaintiff's claims of emotional distress in this case exceed those of the typical Plaintiff who claims emotional injuries arising from physical trauma as a result of another's negligent conduct. The emotional distress claim in this case arises not only from the date of the surgery at issue, but from a Defendant's alleged activities long after the surgery was concluded. The nature of the emotional distress is more akin to negligent infliction of emotional distress, and is not the typical claim for emotional injuries which is evaluated by a jury without the assistance of expert testimony. The Court therefore finds that Plaintiff's claim of emotional distress in this case is more complicated than that presented by the usual injury claim and that the Defendants' request for a psychological examination to evaluate that claim has demonstrated good cause for the evaluation.

4

Appellants' App. p. 29.

On July 18, 2011, the trial court also granted the Weinberger Entities' motion as to Ashmann. That order provides in relevant part as follows:

> The circumstances in this case are quite similar to those addressed by this Court's order . . . in . . . [Riggs's] case. The Court has also been made aware that a different decision on this issue has been entered in a different case in another Room of the Superior Court. . . .
>
> Each plaintiff's claim must be evaluated separately. As was the situation in the prior case before this Court, the Plaintiff's claims of emotional distress in this case exceed those of the typical Plaintiff who claims emotional injuries arising from physical trauma as a result of another's negligent conduct. The emotional distress claim in this case arises not only from the surgery at issue, but from Defendant Weinberger's alleged activities sometime after the surgery was concluded. The nature of the emotional distress is more akin to negligent infliction of emotional distress, and is not the common claim for emotional injuries that is evaluated by a jury without the assistance of expert testimony. The Court therefore finds that the Plaintiff's claim of emotional distress in this case is more complicated than that presented by the usual injury claim and that the Defendants' request for a psychological examination to evaluate that claim has demonstrated good cause for the evaluation.

Appellants' App. p. 193.

## DISCUSSION AND DECISION

On appeal, we addressed the issue of whether the trial court erred in compelling Ashmann and Riggs to submit to psychological examinations in accordance with Indiana Trial Rule 35.[2]

We concluded that Ashmann and Riggs put their mental condition in controversy and that the Weinberger Entities established "good cause" for requesting the examinations. Slip op. at 10. More particularly, we pointed out that

> Ashmann and Riggs both alleged past and future pain, emotional distress, and mental trauma. Further, their replies to the Medical Review Panel emphasized the uniqueness of their emotional distress and injuries where Dr. Weinberger allegedly did not do the surgeries that he said he would do, fled the country, appeared on 'America's Most Wanted' and was found more than five years later living in a tent on the side of a mountain in Italy.

Id. at 9-10. As a result, we determined that based on such claims of unusually severe emotional distress, the trial court did not abuse its discretion in finding that Ashmann and Riggs put their mental condition in controversy. Id.

---

[2] Indiana Trial Rule 35 provides that

> [w]hen the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made. (Emphases added).

Similarly, we determined that the trial court did not abuse its discretion in concluding that the Weinberger Entities established good cause for requesting the mental examination. We reached that result because

> the plaintiffs allege[d] on-going mental trauma that began over eight years ago and is related to Dr. Weinberger allegedly drilling holes in the wrong places in their sinuses, fleeing the country, appearing on "America's Most Wanted," being found living in a tent on the side of a mountain in Italy, and attempting to commit suicide when apprehended, a mental examination is relevant to emotional damages issues that are genuinely in controversy in the case. In addition, the Weinberger Entities have shown a reasonable nexus between the Plaintiffs' emotional distress and damages and the mental examination. Lastly, because the information obtained has to be properly processed and evaluated by a professional, the Weinberger Entities have demonstrated that it is not possible to obtain the desired information through means that are less intrusive than a compelled examination.

Slip op. at 10-11. In light of the above, we concluded that the trial court did not abuse its discretion in granting the Weinberger Entities' Motions for Trial Rule 35 Psychological Evaluations. Id. at 11.

At this juncture, we clarify our holding, yet reaffirm our conclusion that the trial court properly exercised its discretion in this matter. An abuse of discretion occurs when a decision is clearly against the logic and effects of the facts and circumstances of the case. Stowers v. Clinton Cent. Sch. Corp., 855 N.E.2d 739, 742 (Ind. Ct. App. 2006). That said, we in no way intimate that a trial court must compel an involuntary psychiatric examination anytime that a plaintiff alleges that he or she has suffered "great pain, emotional distress, and mental trauma" and that there is something "unique" about the case. Indeed there are unique facts in every case. In short, when a trial court is

7

confronted with facts and circumstances like those before us, it <u>may</u> compel an involuntary psychiatric examination in accordance with Indiana Trial Rule 35. There is no requirement that it <u>must</u> do so.

Having granted rehearing and provided clarification of our holding, we reaffirm our original opinion in all respects.

BRADFORD, J., and DARDEN, S.J., concur.